JOSEPH P. RUSSONIELLO (SCBN 44332)
United States Attorney

BRIAN STRETCH (CSBN 163973)
Chief, Criminal Division

SUSAN B. GRAY (CSBN 100374)
Assistant United States Attorney

450 Golden Gate Avenue
San Francisco, California 94102-3495
Telephone: 415.436.7324
Facsimile: 415.436.6748
Email: susan.b.gray@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>$43,029 AND $9,641 IN UNITED STATES CURRENCY,<br><br>　　　　　Defendant. | No. C 06-7421 (EDL)<br>Related Case Nos. 07-2185 (EDL) &<br>07-1880 (EDL)<br><br>UNITED STATES RESPONSE TO COURT'S REQUEST FOR FURTHER BRIEFING<br>RE: JURISDICTIONAL ISSUES |

On December 3, 2007, this Court requested briefing on numerous factual and legal issues pertaining to the issue of the Court's jurisdiction. The United States' response is set forth below. At the outset, however. it is important to note that the currency that is the subject of this civil *in rem* forfeiture action was not seized pursuant to a state search warrant. Nor was there any state administrative or judicial forfeiture action pending at the time the currency was transferred to federal control. Furthermore, the defendant currency was not held or used as evidence in the States' criminal case. As will be shown below, no state order or action has ever been instituted against the defendant funds and therefore federal jurisdiction is proper.

**A. Description of the case**

　　This is a judicial forfeiture action, as authorized by 21 U.S.C. § 881(a)(6), involving the

1 seizure of defendant $43,029 in United States Currency from a tool box in the rear of a 1998
2 GMC truck, and the seizure of defendant $9,641 in United States Currency from the person of Hector
3 Vasquez on or about May 5, 2006 following a traffic stop in Sunnyvale, California, after which
4 Vasquez was arrested. Vasquez was a deported aggravated felon who was not legally within the
5 United States.

**B. Vasquez arrest and seizure of the property**

7       During the month of April 2006, agents of the Sunnyvale Specialized Enforcement Team
8 received information that brothers "Francisco" and "Hector" of 1999 Panama Avenue, San Jose,
9 California ("1999 Panama Avenue"), were possibly involved in the sale of illegal narcotics.
10 Declaration of Special Agent Michael Robinson ¶2 (hereafter R Decl.) filed herewith. Hector Vasquez
11 allegedly drove a white GMC truck. Id. The Sunnyvale Specialized Enforcement Team ("SET") was
12 part of the Sunnyvale Department of Public Health and consisted of police officers who specialized
13 in investigations of narcotics. Id. ¶3

14       During the course of their investigation, SET officers learned that Hector Palomino Vasquez
15 used the 1999 Panama Avenue address, had prior drug arrests and convictions, and was a deported
16 aggravated felon who was not legally in the United States. Id. ¶4 SET officers also contacted the San
17 Jose Police Department and inquired about the house at 1999 Panama Avenue, San Jose and any
18 associated parties at that address. Id. ¶5 They learned that the San Jose Police Department had had
19 numerous contacts at that address. Id. The San Jose Police Department provided information about
20 the following individuals: Francisco Vasquez, Jesus Jesse Vasquez and Adam Vasquez. Francisco
21 Vasquez was on probation for sales of illegal substances and had three active grants of probation and
22 a search condition. Jesus Vasquez had a long history of drug related offences and was also a deported
23 felon. Id. It was unknown if he was living at the Panama address. Adam Vasquez was incarcerated
24 in prison. Id.

25       As members of the SET unit continued their investigation they contacted Francisco Vasquez's
26 state probation officer, Lisa Carveriro, and confirmed the terms and conditions of the search clause
27 for Francisco Vasquez. Id. ¶6 They also contacted Homeland Security ("ICE") Agent Duane Sanchez.
28 Id. Agent Sanchez confirmed that Hector Vasquez was a deported felon and that an immigration

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                           2

1   detainer would be placed on Hector Vasquez if he was arrested. Id.

2   On May 5, 2006, members of the SET, along with San Jose Police Officers and federal ICE
3   Agent Duane Sanchez met to conduct a probation search pursuant to the probation clause of Francisco
4   Vasquez at 1999 Panama Avenue and also to attempt to contact Hector Vasquez. Id. ¶7 Prior to the
5   search members of the SET unit met at the Sunnyvale Police Department and were briefed on Hector
6   and Francisco Vasquezs' criminal records and immigration status and were provided with photos of
7   the two brothers. Information was also provided about the search terms of Francisco Vasquez's
8   probation. Id.

9   Before the search began officers saw a Hispanic male matching the description of Hector
10  Vasquez get in the GMC truck and drive away from the house. Id. ¶8 Shortly thereafter, Sunnyvale
11  Police Officers Tony Medina and Jim Choi stopped the GMC pickup. Id. ¶9 Officers Medina and
12  Choi recognized Hector Vasquez from photos they had been shown at the briefing. Id. When the
13  officers contacted Hector Vasquez, Vasquez identified himself with a false name. Id. At that point
14  Officers Medina and Choi knew that Hector Vasquez was a convicted aggravated felon who was
15  illegally in the United States and that he had provided a false name. Id. They arrested Hector Vasquez
16  and during a search incident to arrest discovered a large amount of cash in his pants pocket. Id.
17  Officer Chis Fontaine of the Sunnyvale Police Department was at the scene with his K-9 police dog
18  who alerted to the currency for the odor of narcotics. Id.

19  Hector Vasquez and the truck were both transported back to the 1999 Panama address where
20  the probation search had begun. Id. ¶10 Hector Vasquez told the members of the SET unit that the
21  truck was registered to his father, Antonio Vasquez, because Hector did not have a driver's license,
22  but the truck belonged to Hector. Id. He gave permission to search the truck. Id. Prior to conducting
23  a hand search of the truck, Officer Chris Fontaine used his K-9 police dog to conduct a search of the
24  truck. Id. The dog alerted for the odor of narcotics on the rear metal tool box in the bed of the truck.
25  Id. Officer Fontaine searched the tool box and located two paper bags containing respectively
26  approximately $16,709 and $20,100 in U.S. Currency. Id. Detective William Rapoza collected the
27  currency found on Hector Vasquez and in the truck, noted the money on a property report and secured
28  the currency in the trunk of his police car. Id.

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                                    3

1  Hector Vasquez (hereinafter "Vasquez") made a statement to law enforcement officers. Id.
2  ¶11. Vasquez admitted that the approximately 281 grams of methamphetamine located and seized
3  from 1999 Panama Avenue during the search of the house was his; that he sells about $400 worth of
4  methamphetamine per week; that he sells one oz. for $800; that he buys a pound for $12,000; and that
5  he had been selling methamphetamine for about 5 months. Id. Vasquez also admitted that defendants
6  $43,029 and $9,641 belonged to him. Vasquez also stated that he had the cash because he did not
7  have a bank account. Id.

8  While still at 1999 Panama the SET unit contacted the DEA Field Office in San Jose
9  California, and requested that the money be federally forfeited. Id. ¶12 Special Agent Michael
10 Robinson was one of the DEA agents working that day. Id. He went to 1999 Panama and met with
11 Detective William Rapoza who briefed him on the investigation and provided him with (1) the
12 approximately $9,641 in U.S. currency seized from the person of Hector Vasquez, (2) approximately
13 $16,709 in U.S. currency seized from the rear tool box of the GMC truck and 3) approximately
14 $20,100 in U.S. currency found in the rear tool box of the GMC truck.[1] Id. Special Agent Robinson
15 transported the currency to the San Jose Resident Office of the DEA where it was secured. Id. On
16 May 8, 2006, he and Special Agent Partick Donlin transported the currency to the Bank of America
17 where it was counted and converted into cashier's checks made payable to the United States
18 Marshal's Service. Id. Special Agent Robinson turned over the checks to the Seized Currency
19 Custodian at the DEA San Jose Field Office. Id. On June 12, 2006, these checks were turned over
20 to the United States Marshal's service. Id.

---

[1] On May 9, 2006, Special Agent Robinson received a telephone call from the Sunnyvale Police Department, SET unit and learned that while processing the envelopes and other indicia taken from the GMC truck on May 5, officers had discovered an additional approximately $6,220 in U.S. currency. Id. ¶13 The currency was held in the Sunnyvale Police Department property unit until Special Agent Robinson took possession of it on May 9, 2006. Id. Special Agents Patrick Donlin and Robinson transported the approximately $6,220 to the Bank of America where it was counted and converted into a cashier's check made payable to the United States Marshal's Service. Id. They subsequently deposited the check with the Seized Currency Custodian at the DEA San Jose Field office until May 12, 2007, when it was turned over to the United States Marshal's Office, San Jose Branch. Id.

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                    4

1    On May 18, 2006, thirteen days after his arrest, Hector Vasquez pled guilty in Santa Clara
2 County Superior Court to possession for sales of methamphetamine in violation of California Health
3 and Safety Code Section 11378.[2] Id. ¶14

4 **C. Initiation of DEA Administrative Forfeiture Proceedings**

5    In June 2006, the DEA office in San Francisco submitted reports regarding this seizure to the
6 DEA Forfeiture Counsel, in Arlington, Virginia (DEA Headquarters). R. Decl. at ¶15, *See also*
7 Declaration of John Hieronymus ( hereinafter "H Declaration") filed herewith. An attorney or
8 paralegal subsequently reviewed the report to ensure that the DEA field office provided adequate
9 information to support the federal administrative forfeiture. H Decl. at ¶ 4(a), 5(a). The process
10 included a legal review of the evidence that existed to seize the property. Id. Following the review
11 process, the DEA accepted the case for administrative forfeiture. Id.

12 **D. The DEA Administrative Forfeiture Proceedings**

13    On June 20, 2006, pursuant to Title 19, U.S.C. Section 1607 (a) and Title 18, U.S.C. Section
14 983(a), the DEA sent written notice of the seizure of the $9,641 and $ 43,029 by certified mail, return
15 receipt requested, to Hector Palomino Vasquez, 199 Panama Ave, San Jose, CA 95122. Id. Both
16 notices were signed on June 26, 2006 by Hector's father, Antonio Vasquez. Id. at ¶ 4(b), 5(c). On
17 that same date the DEA also sent written notice of the seizures to Hector Palamino Vasquez at
18 Elmwood Correctional Facility in Milpitas, California. Id. at ¶(4), 5(d). The notice was returned to
19 DEA because the U.S. Postal Service was not able to locate Vasquez at that facility. Id.

20    Pursuant to Title 19, U.S.C. Section 1607(a) and Title 21, Code of Federal Regulations
21 (C.F.R.) Section 1316.75, the seizure of the property was published in the Wall Street Journal on July
22 3, 10 and 17, 2006. Id. at ¶ 4(d), 5(e) The published and mailed notices explained the option of filing
23 a claim with the DEA Forfeiture Counsel in order to contest the forfeiture action in United States

---

26  [2]Vasquez was previously convicted on two separate occasions of possession of controlled
substance for sale in violation of California Health & Safety Code 11342 on or about April 8,
27 1985 and again on June 1, 1989. Vasquez was also convicted of transportation/sales of
controlled substance in violation of California Health & Safety Code Section 11352 on or about
28 December 23, 1992. On November 7, 1997, Vasquez was deported.

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                5

1  District Court. Pursuant to Title 18, U.S. C. Section 983(a)(2)(b), the published and mailed notices
2  also stated that the deadline to file a claim was July 25, 2006, or if the mailed notice as not received,
3  August 17, 2006. Id. In addition, the published and mailed notices explained the option of filing a
4  petition for remission or mitigation. Id. at 4(d), 5(e).

5  On August 24, 2006, the DEA sent written notice of the seizure by certified mail, return
6  receipt requested, to Hector Vasquez at Chuckawalla State Prison, Blythe, California. Id. at ¶ 4(e),
7  5(f). On August 29, 2006, an individual signing the signature block accepted delivery of this notice.
8  Id. On September 6 and September 8 the DEA received a claim for seized property from Vasquez.
9  Id. ¶ 4(f,g) and 5(g,h), and Exhibits 8 and 9 to H Decl. The claims were made on preprinted forms
10 approved by the Judicial Council of California and Vasquez had checked the box noting that he is
11 filing the claim "in response to notice of administrative proceedings." Id. at Exhibit 8 and 9.

12 On September 11, 2006 the DEA referred Vasquez's claim to the United States Attorney for
13 the Northern District of California for initiation of judicial forfeiture proceedings. Id.¶ 4(h) and 5(i).
14 The DEA notified Vasquez of this action on the same date. Id.

15 On October 5 and 10 the DEA received additional documentation of his claim from Vasquez
16 and on November 3 the DEA referred the additional documentation to the U.S. Attorney' Office.
17 H Decl ¶ 4 (i, j and k) and 5 (j,k,l), see also, Exhibit 12 and 13 to H. Decl..

18 On October 25, 2006 someone in the court clerk's office for the Superior Court of Santa Clara
19 County filed Vasquez's claim opposing forfeiture. Vasquez filed the same forms he had filed in the
20 federal administrative forfeiture action. There are two boxes on the claim form: one states the form
21 is being filed in "response to an administrative forfeiture" and the other box states the claim form is
22 being filed in "response to a judicial forfeiture." Vasquez again checked the box indicating he was
23 filing in response to an administrative forfeiture claim.[3] No one in state or federal government, nor
24 any other possible claimants to the property, was ever served with notice of this action. See, Letter
25 from Santa Clara County Deputy District Attorney Robert Johnson attached hereto as Exhibit C.

26 _____

27  [3] The claims filed in state court are attached as Exhibits A and B. Vasquez notes that he
    attempted to file these documents several times in state court and they were rejected as being in
28  "the wrong forum". Vasquez Reply filed 4/30/07 p.3. Docket #23.

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                6

**E. The Federal Judicial Forfeiture Proceedings**

On December 4, 2006, the United States filed this federal forfeiture action, No. C 06-7421 JSW against defendants $43,029 and $9,641 as subject to forfeiture under 21 U.S.C. § 881(6), and gave notice to interested parties, including Vasquez at the Chuckawalla Valley State Prison, that in order to appear and defend defendants $43,029 in United States Currency and $9,641 in United States Currency, an interested party was required to file a claim within 30 days of receiving notice and an answer thereafter within 20 days. The Complaint and related documents, including the Notice of Forfeiture Action were sent by certified mail to Hector Vasquez who acknowledged receipt by signing the return receipt. *See* Opposition of the United States to Hector Vasquez's Motion to Strongly Object to the Forfeiture Action, filed March 20, 2007 in No. 06-7421 JSW, Exhibit 2. Docket #10. Further evidence that Vasquez received the documents is the express reference to the forfeiture action in Vasquez's initial pleading, Motion to Strongly Object to the Forfeiture Action filed on February 2, 2007. Docket #7.

Vasquez also attached copies of the two claim forms he had filed in state court. The United States first learned of these actions from the attachments and, as a result removed them to federal district court in April 2007. *See e.g.* Notice of Removal, Docket #14.

**F.   Discussion**

As the above procedural history illustrates, Vasquez has employed a shotgun approach to his forfeiture filings: Although he received notice that his property was being federally forfeited, and he had filed a federal claim and participated in the federal administrative forfeiture action, he later filed the same forms in state court. It is not entirely clear if he believed he was filing a state administrative claim or a state judicial action. Faced with these procedurally muddy waters, the Court has requested briefing on the issue of concurrent jurisdiction.

**G.   Federal Adoption is Proper**

It is well-established that federal law enforcement agencies may adopt property seized by another agency for the purpose of forfeiture under federal law. United State v. One Ford Coupe Auto, 272 U.S. 321, 325 (1926); Madewell v. Downs, 68. F3d 1030, 1037 (8th Cir. 1995) (collecting cases); United States v. One 1992 Ford Mustang GT, 73 F. Supp. 2sd 1131, (C.D. Cal. 1999); Ivester v. Lee,

991 F. Supp. 1113, 1119 (E.D. Mo. 1998). Regulations governing adoptive forfeitures are codified at 21 C.F. R Section 1216.91(1). Moreover, Congress recently reaffirmed the propriety of adoptive forfeitures by making the transfer of property from a state to a federal agency one of the exceptions to the requirement that federal forfeitures proceed by way of a seizure warrant. *See*, 18 U.S.C. Section 981 (b)(2)(c).

**H.   Federal Jurisdiction is Limited by Considerations of Comity**

It is well-established, however, that only one court may have jurisdiction over property at a time. Thus, the first court to obtain *in rem* jurisdiction maintains it to the exclusion of other courts, until the first court relinquishes its control. *See* Madewell v. Downs, 68 F.3d 1030, 1041 n.13 (8th Cir. 1995); United States.v. One 1985 Cadillac Seville, 886 F. 2d 1142, 1145 (9th Cir 1989); United States v. Kama, 394 F. 3d 1236, 1240 (9th Cir. 2005) (concurring opinion). Courts considering the issue of whether state or federal jurisdiction exists have focused on the extent of any state involvement with the property at the time it comes under federal control. *See e.g.*, United States.v. One 1985 Cadillac Seville, 886 F. 2d 1142, 1145 (9th Cir 1989); United States v. Kama, 394 F. 3d 1236, 1240 (9th Cir. 2005) (concurring opinion);  Approximately 28 Grams of Marijuana , 278 F. Supp. 2d 1097,1102-1107, United States v. $639,470.00 in U.S. Currency, 919 F. Supp. 1405, 1410-1411 (C.D. Cal. 1996); United States v. $25,000 in U.S. Currency 2003 WL22159054 *5 (N.D. Cal 2003).

Courts in this district and in the Ninth Circuit have found federal jurisdiction is precluded in two situations: (1) the property was seized pursuant to a state search warrant and no turn over order was obtained prior to federal control of the *res;* and/or (2) the property was already the subject of a state court proceeding or state order at the time the property was transferred to federal authorities. Id. However, when the property was not seized pursuant to a state search warrant, held as evidence in a criminal case nor was it the subject of any state court order or proceeding, as in the instant case, the Ninth Circuit has held federal jurisdiction is proper. United States v. One 1985 Cadillac Seville, *supra* at 1145 (9th Cir 1989); *see also* United States v. $639,470.00 in U.S. Currency, *supra* at 1410 (C.D. Cal. 1996).

In United States v. One 1985 Cadillac Seville, 886 F. 2d 1142, 1145 (9th Cir 1989), dealt with

1  California authorities warrantless seizure of currency and a vehicle during a traffic stop. The state
2  filed suit for forfeiture of the currency, but took no action with respect to the seized vehicle. The
3  Ninth Circuit held there could be no federal *in rem* jurisdiction over the currency because of the prior
4  and continuing in rem jurisdiction of the state court. With respect to the vehicle, though--as in the
5  instant case--the state had never instituted forfeiture proceedings and no state court order had ever
6  issued, leading the Court to conclude that the federal court had *in rem* jurisdiction over it. Id. at 1146.
7      Implicit in the Ninth Circuit's holding that the federal court exercised jurisdiction over the
8  vehicle is the conclusion that under California law, the state's warrantless seizure of the vehicle did
9  not create state court jurisdiction over it. "The . . .automobile was the subject of neither the state
10 forfeiture complaint nor of any state court order. The district court had proper jurisdiction over it .
11 . ." Id. at 1146. A formal turnover order from the state court was thus required for the currency, but
12 since there was no state court jurisdiction over the vehicle, no court order was necessary.
13      The vehicle in One Cadillac Seville and the defendants in this case are similarly situated. In
14 both cases, state seizure was followed by extrajudicial transfer to federal law enforcement. In neither
15 case was there a warrant involved; nor were any state forfeiture proceedings instituted at the time of
16 the transfer. As discussed in Section C below, Vasquez's attempt to establish a state claim *after* the
17 property already had been taken into federal custody does not establish state jurisdiction.
18      Similarly in United States v. $639,470.00 in U.S. Currency, 919 F. Supp. 1405 (C.D. Cal.
19 1996), state narcotics agents seized a quantity of currency and then asked the DEA to adopt the seizure
20 so that the property could be forfeited pursuant to federal law. Id. at 1409. The claimants moved to
21 dismiss the federal forfeiture action on the ground that the court lacked *in rem* jurisdiction over the
22 property. Id. at 1410. The court recited the "well-established rule of ancient vintage" that a state court
23 and a federal court cannot possess simultaneous *in rem* jurisdiction over the same *res*. Id. But it
24 concluded that the comity concerns that weigh heavily against a federal court's exercise of *in rem*
25 jurisdiction over property seized by state law enforcement are absent where, as in the instant case, the
26 state has presented the *res* to the federal Government for adoption and there was not any state court
27 proceeding with which the adoption could interfere.
28      The factual situation in this case differs markedly from those of In re Approximately 28 Grams

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                        9

1  of Marijuana , U.S. v. $25,000 Currency, and United States v. Kama. In each of those cases a state
2  action or order was pending at the time the property was transferred from state to federal custody. Not
3  so in the instant case. Vasquez filed his state court claims 6 months *after* state authorities had turned
4  over the money to federal authorities.

5        In United States v. Kama, *supra* at 1340, Judge Ferguson's concurring opinion reiterated the
6  reasoning of *One Cadillac Seville*. He found that a state police transfer to federal authorities of
7  property seized pursuant to a state search warrant, without a court order and while the property was
8  still the subject of a state order to return the property to its owner, violated the rule against concurrent
9  jurisdiction. First, the property had been turned over to federal authorities without a court order as
10 required under Oregon law governing search warrants. Second, the property was the subject of a state
11 court proceeding at the time the federal seizure warrant was issued. Neither situation exists in the
12 instant case.

13       Likewise, in United States v. $25,000 U.S. Currency, *supra,* Judge Conti rejected federal
14 jurisdiction when the property had been seized pursuant to a search warrant, no state court had released
15 it, claimant had been served with a state notice of forfeiture for the property, and he had filed a claim
16 in state court--all of which occurred *before* the property came into federal control. In denying federal
17 jurisdiction Judge Conti relied on the fact that the events "pre-date[d] the Defendant currency being
18 transferred to the federal government." Id. *5.

19       This case differs from U.S. v. $25,000 in U.S. Currency in several respects. First, the currency
20 here was not seized pursuant to a search warrant, necessitating a court order releasing it to federal
21 custody. Second, the claim filed in state court in U. S. v $25,000 in U.S. Currency was timely filed
22 (and presumably served) *before* the transfer from state to federal control of the currency. In the instant
23 case the claim opposing forfeiture was not timely filed or served, and took place 6 months *after* the
24 currency was transferred to federal custody.

25       Similarly, in *In re* Approximately 28 Grams Marijuana, *supra*, state authorities had transferred
26 the marijuana at issue to federal authorities after it had already been the subject of a state criminal case,
27 an order had been issued by the state court to return the property, the state court had issued an order
28 to show cause and held the local authorities in contempt. All of this state court involvement had

occurred *before* the marijuana had been transferred to federal custody. While Judge Patel discussed whether the state seizure of the property alone "might" have given the state exclusive jurisdiction over the marijuana, it does not appear to be the determinative factor in her decision Rather, she found significant state court involvement with the property prior to the attempt to transfer the property to federal jurisdiction: The state court had asserted jurisdiction over the seized property by adjudicating the motion for return of property and ordering the Sheriff to do so. Id. There was no such prior state court involvement in this case.

I. **Vasquez can not circumvent the federal forfeiture proceedings by filing in state court**

The papers filed by Vasquez on October 25, 2006--whether classified as an administrative or a judicial state claim--do not divest the federal government of the *in rem* jurisdiction it acquired prior to his filing. *See One 1986 Chevrolet Van*, 927 F.2d 39 (1st Cir. 1991) at 44-45 (neither initial seizure of vehicle by local police pursuant to Rhode Island search warrant, nor claimant's filing of state motion to return property after claimant learned of referral to DEA, affected federal court's exclusive jurisdiction over adopted forfeiture); *Edney v. City of Montgomery*, 960 F. Supp. 270, 274 (M.D. Ala. 1997)("claimants must not be allowed to circumvent [adoptive] federal forfeiture actions by racing to state court") (citing *United States v. $119,000 in U.S. Currency*, 793 F. Supp.246 (D. Hawaii. 1992) at 250 n.5 (if post-adoption state court motion to return property prevailed, it would set a "dangerous precedent which would encourage claimants to circumvent federal forfeiture proceedings by running to state court....").

As the letter of Deputy District Attorney Bob Johnson attached as Exhibit C notes, only the state can initiate a state forfeiture action. The state chose not to do so in this case. Vasquez's confused or belated attempt to file a state claim for return of property, which he knew to no longer be in state custody, does not divest this court of jurisdiction over the currency.

J. **THIS COURT'S JURISDICTIONAL QUESTIONS**

1. *Who seized the property?. Was it the Sunnyvale Specialized Enforcement team or the DEA?*

The defendant currency in this action was initially seized by the Sunnyvale Specialized Enforcement Team (SET) as part of a search incident to arrest (the $9,641 from Hector Vasquez's pants pocket) and 2. pursuant to Hector Vasquez's consent (the $43,029 in the truck).

2. *What is the Sunnyvale Specialized Enforcement Team?*

The Sunnyvale Specialized Enforcement Team is made up of members of the Sunnyvale Police Department who specialize in narcotics investigations.

3. *If the property was seized by a local agency, does that block this Court's jurisdiction over the property at issue?*

No, as noted above, there was no search warrant in this case, which would require a turn over order under California law, nor was there a pending state court forfeiture proceeding at the time DEA took custody of the currency. ." In both *In re* Seizure of Approximately 28 Grams of Marijuana and United States v. $25,000 cited by this court, there was a pending state action opposing forfeiture and or seeking the return of property at the time of the transfer from state to federal custody took place. That was not the case here.

4. *Did the seizing agency have a warrant issued by a state court to conduct the search, or was the search conducted pursuant to other authority? If not, how does this impact the Court's jurisdiction in this case?*

The seizures at issue here were not pursuant to a state search warrant. The property was seized during a search incident to arrest and pursuant to Vasquez's consent. There was no state action of any kind pending when the DEA took control of the defendant currency. Therefore, there was no need for a turnover order and there is no bar to this Court's exercise of federal jurisdiction. United States v. One 1985 Cadillac Seville, 886 F. 2d 1142, 1145 (9th Cir 1989).

5. *Do Vasquez's two state court actions that were removed to this Court constitute state forfeiture actions?*

No. As Santa Clara County Deputy District Attorney Robert E. Johnson, indicates, only the State can initiate a state forfeiture judicial action by the filing of a petition. Since the DEA took federal custody on the day of the seizure, the State would have lacked subject matter (*in rem*) jurisdiction to have filed such a claim. Vasquez's claim, filed after he had received notification that the currency was in federal custody and appeared and made a claim in the DEA administrative forfeiture process, did not start a state forfeiture action, especially since he never served it on the state or anyone else. At most, Vasquez's forms might be liberally construed by a state court, had it the

currency and thus subject matter jurisdiction not present in this case, as a motion for return of property. However, such a motion would not lie in this case because, at the time of Vasquez's filing, neither the state court nor the state had the requisite custody or control of the funds.

*6. Did Vasquez properly serve those complaints, and how does that impact this Court's jurisdiction?*

As noted above, Vasquez did not properly serve his claim forms (they were not forfeiture complaints). He did not serve any state or federal authorities. The first time anyone in state or federal government had any notice that he had filed any type of state forms in state court was when he attached the filed state claims to his February 2, 2007, Motion to Strongly Object to the Forfeiture Action. However, as noted above, even if the state had been properly served, the currency was in federal custody and the state court lacked subject matter jurisdiction. At most the papers might have been construed as a motion for return of property, but again, the property was not in state control and the court would not have had jurisdiction.[4]

*6. Were these the only filing in state forfeiture actions?*

Vasquez's claims, which did not start a state forfeiture action, were the only papers filed in the state court until the United States removed the action to federal court in April 2007. *See,* Santa Clara County Superior Court Docket Sheets attached as Exhibit D.

*7. Did the state institute any proceedings related to the property?*

No. The state did not initiate any proceedings related to the property. The state did not initiate any state administrative forfeiture action, give notice to Vasquez that it was going to initiate state forfeiture action, nor did it initiate any state judicial forfeiture action. Again, the facts of this case are markedly different from those in Approximately 28 Grams of Marijuana and U.S. v. $25,000 in U.S. Currency, *supra.* In each of those cases there was a pending state action opposing forfeiture and asserting jurisdiction over the same property.

---

[4] The forms he attached to his Motion to Strongly Object were the same forms he had filed over a month earlier as his claim in the DEA administrative forfeiture proceedings with one notable exception. The state claim forms filed in federal court had a state court number and file stamp from the Santa Clara County Superior Court. The forms filed with the DEA had no indication that HV had or was going to file a state claim. Vasquez' state claim forms contained many errors. These are set forth in the Notice of Removal filed April 16, 2007, Dkt.#14.

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                    13

8. *Did the state hold the property after disposition of the criminal action?*

No. The currency was taken from the scene by an agent from DEA and was never booked into evidence as a part of the criminal case by any other local law enforcement agency. It was never held or used as evidence in the criminal case. The United States suggest that as such it differs from the property seized in Gershenhorn v. Superior Court, 227 Ca. App. 2d 361, 366 (1964) and discussed by the court in Approximately 28 Grams of Marijuana, *supra* at 1106-1107. In Gershenhorn the property at issue was seized by police officers, had been offered in evidence before a grand jury and was currently in the possession of the court or its officers and agencies.[5]

9. *Was there any affirmative disposition by the state court with regard to the currency? When did the state court last enter an order involving the property?*

There was no affirmative disposition by the state court with regard to the currency. The state court never entered *any* order involving the property. When the United States finally received notice of the state claims in February 2007, it removed the cases to federal court pursuant to 28 U.S.C. Section 1441, et seq.

10. *The government notes that the property was previously the subject of an administrative forfeiture and that the United States, not the state, has control over the property. How did the United States get control over the property? Did the state ever have control over the property?*

When SET officers discovered the defendant currency they notified the DEA who arrived at the scene and took possession of the currency. Although the property was inventoried at the scene of the arrest, it was never booked into evidence, taken to the Sunnyvale police station, used as a part of the criminal case, part of a state administrative forfeiture or the subject of any state forfeiture proceeding. Given that the currency had not been seized pursuant to a search warrant, nor was there any state administrative or judicial proceeding pending, no order was required to release the property

---

[5] Both Gersehenhorn and the cases cited by Judge Patel in her discussion of state control of seized property under §1536 of the California Penal code dealt with seized property that "constitutes part of the evidence on which judicial action against its owner will be taken" or "held for use as evidence". Approx. 28 Grams Marijuana, supra at 1106. Neither situation exists in this case. The currency was never held for use in the criminal case against Vasquez.

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                    14

1 to the DEA. *See In re* One 1985 Cadillac Seville, 866 F. 2d at 1146; United States v. $639, 470.00
2 in U.S. Currency, 919 F. Supp. 1405, 1410 (C.D. Cal. 1996).
3 11. *How does the prior federal administrative forfeiture impact jurisdiction?*
4     The defendant currency came into federal jurisdiction on May 5, 2006, when it was turned over
5 to the DEA for federal forfeiture. At that time no state administrative or judicial action was pending.
6 No intervening act by Vasquez changed the fact that the federal government has retained exclusive
7 jurisdiction over the *res* since that time.
8 **Conclusion**
9     The State of California did not acquire exclusive *in rem* jurisdiction prior to the initiation of
10 the federal forfeiture process by DEA. It had not initiated any action against this money, including a
11 state forfeiture action. No turnover order was required since the seizures were not pursuant to State
12 search warrants. For these reasons, the DEA properly acquired exclusive *in rem* jurisdiction of the
13 $9,641.00 and $43,029.00 in U.S. currency. Furthermore, Vasquez's attempt to seek the return of the
14 property in State court after the federal forfeiture process had begun did not deprive the federal
15 government of *in rem* jurisdiction.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

Dated: January 7, 2008

_____
SUSAN B. GRAY

US RESP. TO JURID. ISSUES
No. C 06-7421EDL                              15